Good afternoon, everyone. Judge Callahan and I would like to welcome and thank Judge Garbus, who has been sitting with us this week from the District of Maryland. Thank you so much. The only case we have on for argument is Santana v. Holder. Counsel, please approach and proceed. Good afternoon, Your Honors. My name is James Todd Bennett, and I'm representing the petitioner Oscar Santana, and I'd like to reserve five minutes of time from the 15 that's allocated for rebuttal. All right. Our on-review is the BIA decision is on review. It issued a reasoned decision, so that is the decision that is in front of us today. Just as a basic factual genesis of this case, my client was a lawful permanent resident from the time before he was age 1. He failed a citizenship in 1992 as far as the oral examination goes. That case was ultimately administratively closed, did not receive notices of the recalendering, and based on his credible testimony, which wasn't challenged as far as that issue goes, it would appear that he did not receive the notice and didn't know about any recalendering. So is it your representation that there was a recalendering of the examination, that he failed? That is correct. Okay. So where can we find that in the record? I believe it's in the certified record on appeal. The administrative closure order is 469. But where is it in the record that there was a recalendering of the examination that he failed during the naturalization proceedings? I do not have the exact sites of the record, Your Honor, during, while the opposing party is arguing, I'll locate those for you. But there were three, if I'm not mistaken, three notices sent out, but none of them appear to have been postmarked or mailed. They're just simply notices saying we are recalendering and this is your date. I just don't see how you ultimately get around, or how can we distinguish or get around our decision in Hernandez State, DeAnderson v. Gonzales, which seems to hold that termination of removal proceedings based on a pending naturalization proceeding requires an affirmative statement from the Department of Homeland Security. And I don't find that here. Understood, Your Honor. The issue here would be whether or not that actual document cited at 469 in the record would constitute a prima facie finding. What the judge has to do at this point is find, on the motion, is first make a prima facie, an indication that there's a prima facie finding of eligibility for naturalization. Then once that's established, then the question is whether they're appealing or can be. But it requires an affirmative statement, not a prima facie finding. So you're not, so you're, you're not complying with that case. Are you asking us to extend that case, or what are you, what are you asking? Yes, I understand, Your Honor. Yes, that's what I'd be asking the court, this Court, to consider. As long as your court has some sort of prima facie finding that he is, in fact, eligible for citizenship, then that gets him past the first hurdle on the motion. Or, excuse me, on the motion to terminate. The reason that would be. But where would that be relative to when he started collecting some criminal convictions? Well, let's put it this way. If the non-protunct doctrine, which is raised in the brief that was raised down in front of the immigration judge and the Board of Immigration Appeals, basically would relate the case back to the time when he did not receive notice of the recalendering, despite his repeated requests to have a recalendering, or at least two, I should say. Now, if he goes, the major period I think necessarily would have to be that time period where he was eligible. In other words, do we fast forward to 2008, where he's obviously can't show good moral character, or are we going back in time and is the key measure, if Citizenship and Immigration Service ultimately adjudicates this case and decides that non-protunct applies, then the measurement would necessarily have to be back in that time period. Well, so you essentially have to make him a citizen before he committed his crimes so he can't be removed. Is that what you're saying? In a nutshell, what I'm saying. Okay. What's your best authority for that? I mean, your client obviously, you know, I mean, he certainly has been here a long time. He certainly had, you know, his case would be more sympathetic, obviously, if he hadn't started committing crimes, and not just one, but then continued. But I just, I'm looking for some authority other than sympathy to hang our hats on. Frankly, there are no cases on this. I'm sorry? I'm sorry? I just didn't hear what you said. I say there are no cases exactly on point. This is first impression, I would imagine. Essentially, we do have Acosta-Hidalgo, which basically says they need to issue a decision. Same thing with Hernandez. Both of them say CIS has got to, excuse me, Citizenship and Immigration Service has to issue some sort of indication whether we think he's prima facie eligible. And the dissent in the administrative decision, Acosta-Hidalgo, actually points out what the problem with that is. Just by silence or inaction, you can determine the case. And it's somewhat similar to this situation where you don't have, all you've got is the finding back then. You don't have any finding now. And if the Nunc Pro Toc doctrine ultimately is applied, then the measure period would necessarily have to be back in 1994-95 when he's 23 years old. If, moving on to the first issue that was raised in the brief is a question of whether or not respondent, excuse me, I'm sorry. Yes. How was your client prejudiced by that? I don't think we need to show prejudice in this case for this reason, Your Honor. Understanding that Coley is there. Coley is a pleading case. Essentially, there's jurisdiction if you meet the requisite elements, and there are general elements laid out in the statute. What happens in this case, what takes it out of it, is you have a regulation or two regulations, actually, that say essentially the same thing that are unambiguous on their face. If they're unambiguous on their face and the immigration judge doesn't comply with them and the Board of Immigration agrees that appeals agrees, then you're taking, you're rewriting the statute. And I think you're looking at a Christensen situation rather than a Coley situation. And under Christensen, if you're going to make a decision that's beyond the scope of the regulations or do something or require something that's beyond the scope of the regulations, then you're rewriting the regulation if it's unambiguous. And I think these two regulations are quite unambiguous. So for noncompliance, I'm sorry. Counsel, what was the infraction of the regulations that you're asserting? What portion of the regulations was violated? Are you saying that the regulations were violated by changing the date to say on or about? In this fashion, Your Honor. In the sense that they didn't do the procedural steps they're required to do under the regulation. And as long as that regulation is unambiguous, it says you've got to file a written amendment and you've got to read it to the alien and then the alien gets ten days or a reasonable time, rather, to respond. But that's for additional charges or substituted charges of inadmissibility. You're not arguing that the charges were changed, are you? No. And I think the regulations are quite clear. It's and or, factual allegations or charges. I think they're both clearly encompassed by the regulation. But what was the you're saying that the essence of the factual allegation was changed? Adding on or about? Sure. Because you're looking at McAllen. If you look at McAllen, which is this circuit's precedent going back to 1983, a criminal case, what it does is it opens up a window of one or two days and it allows changes what the immigration, excuse me, the Department of Homeland Security has to prove in a case. Well, I can see that in a criminal prosecution that you held up the bank on or about so you're alibis for a different day. We're talking about when were you convicted? How much time do you need to prepare to address on or about rather than August the 7th? Well, I understand, Your Honor. And as a practical matter, I see the point. But the problem is this is a regulatory requirement. And we're dealing with an administrative law system, not an Article III court. And if they don't comply with the regulations, they can't just rewrite them and say, okay, it's okay to do this. As suggested by the BIA, which says that, oh, well, you just have to allege August 2008 and you've satisfied the problem. That gives you a 30-day window. If it's, if the addition of the chart, excuse me, of the date essentially would fall under this Court's precedent in Lozaro, where the exchange actually in Lozaro is well spelled out in the opinion. And it's not unlike the exchange, the colloquy here. In other words, do you want me to do this? I'm going to do this. Is this what you want? Yes. And then there's an interdelineation. The immigration judge in Lozaro went on at length saying how we are traditionally interdelineate and do all of this. Well, clearly under the holding of Lozaro, that's no longer permissible. It was remanded to the BIA, and the BIA remanded it back down. Relief was granted in Lozaro. But in the same kind of colloquy was involved here. Counsel, you wanted to save five minutes. You're down to four minutes and eight seconds. Yes, Your Honor. If you want to save it for rebuttal. Thank you. Thank you, Counsel. Good afternoon. My name is Jesse Bless. I represent the Attorney General of the United States. I want to deal with the Court's jurisdiction first because a lot of this case can be resolved at that stage. This Court has jurisdiction to determine its own jurisdiction, which in this case requires the Court to determine whether the petitioner is, in fact, removable by reason of having committed an aggravated felony. Now, he doesn't dispute, and the record confirms, that his Federal felony under the Controlled Substances Act is an aggravated felony, rendering him removable. That would take care of the prejudice, any prejudice that he could show. He couldn't show prejudice at that point. I believe your case, which I know you drafted, Judge Callahan, and Coley, that stands for the principle that any regulatory error needs a prejudice to be established in order to, for there to be any remedy in immigration proceedings. And, in fact, this Court's jurisdictional inquiry would solve that here because, in fact, he is removable. The criminal alien bar 1252A, Title VIII, 1252A2C applies. And any issue with regard to the regulatory, alleged regulatory error did not result in prejudice. But I want to talk about the regulation, the language specifically. And, Judge Rawlinson, you hit on a point, which is, you know, it talks about additional or substituted. It also says may be lodged in writing, not shall. And what's important there is the rest of the regulation contains shall language or must have requirements, but not that part. And at the very least, it creates some ambiguity as to whether all or any changes have to be in writing. You know, that may is permissive. But to the extent that there's any ambiguity, the Board in this case, their interpretation of the regulation to allow for minor immaterial amendments to preexisting allegations is not plainly erroneous, and deference is therefore warranted. In this case, the immigration judge provided the Petitioner with an opportunity, a continuance, to respond to the amendment. This wasn't something he did and said, okay, you're cut off. He provided due process, allowed the Petitioner to take a timeout or continue the case and come back with any challenges to his removability. And it's important to note that the date of his conviction is not material to the removability, because what his removability requires is any conviction after his admission. His admission was in 1971. Well, his conviction, we know, was sometime in August 2007, well after his admission. Now, one final matter. In preparing for argument today, on page 305 of the record is the judgment in the criminal case. And in this Court's decision in Flans or Plains, the date of conviction is the date the judgment is imposed. That is when it is filed. At the top of page 305 in the record, I know that the trial judge filed that on August 8th. So there was never even a need for that amendment to the notice to appear in this case. We know the conviction was on the judgment was imposed on August 8th. And so, of course, this Court has, you know, as part of its jurisdiction, I urge you to look at page 305 of the judgment. And although there are two dates below and where he signed it, the top, we know, it's kind of like that ECF filing. It was done on August 8th. And so the Department of Homeland Security had it correct in this case. You're distinguishing between the date of sentence and the date of judgment. Correct. And so this is the date of conviction. When the judgment is actually filed. Enter. Yeah. And so we know. So here, it's unexplained. We don't know what happened. But I do know the trial judge, he filed it as of he was convicted as of August 8th under this Court's case law. Can you respond to the petitioner's non-proton argument that, I mean, he's pretty sympathetic up until the time that the crimes start. I mean, in terms of because he's been here forever. He didn't pass the test. And, you know, I would like to think he would be in a different situation at this point if he hadn't committed, you know, that, you know, he'd get more chances to pass the test and all that. But what are we, what is counsel asking for here? He's asking you to do something he should have asked the Department of Homeland Security for, which is to buy into this argument. And, of course, under Hernandez v. Anderson, that's the requirement. You don't go to the, you go to the Department of Homeland Security. And, of course, keep in mind the Board's precedent and this Court's precedent was on the books at the time of the immigration hearings. So he would have had to go to them and say, this is my, these are my equities. Do you think I'm prima facie eligible? Non-proton. Now, I don't want to step in their shoes. They never were asked to make that determination, which is critical. And that should really end the discussion before this Court. I can tell you, this is almost advisory, but my own legal opinion would be that it wouldn't carry much weight because naturalization, there's no room for that type of equitable principles. You're judged for naturalization at the date of your application. And I know he doesn't want to be judged based on having committed an aggravated felony, but I've never seen that principle applied in a naturalization context. So, counsel, it's your representation that no request was ever made from the Department of Homeland Security to concur in his efforts to show a prima facie eligibility. No request was ever made? Not in immigration proceedings. I mean, when he filed, so he relies on this statement in the late 1990s to say, oh, no, this is an affirmative statement of my prima facie eligibility. Number one, there's nothing there that says he's prima facie eligible. Number two, under Hernandez v. Anderson, when you want to terminate your removal proceedings, you have to make your request, as a matter of fact, once they've commenced. So in the immigration proceedings, he needed to go and go to citizenship and immigration services and say, I'd like to terminate my removal proceedings, and I know there's a presumption that they should proceed with haste, but I'd like to stop that, and what I need from you is a letter saying that I'm prima facie eligible, because otherwise they're going to move on. As a practical matter, how is that accomplished? Is there a form that's filled out, or does there have to be a pleading filed? How is that accomplished generally? Really, I mean, it could be a letter. It could be, you know, like any evidence you would submit with a motion to reopen, you know. Number one, you'd like, you know, you'd want to see evidence that you made the request. And number two, you'd like to see evidence that. Right, that's what I was thinking. Asking, how do you make the request? Is there a form that is filled out, or how is that request officially transmitted to the department? I mean, I'm not sure there's a specific form. It's much in the way of, like, a prosecutorial discretion. You know, you have to get in contact. These are my equities. They've known this. And I may be reading too much into this, but since the Court's case in Hernandez v. Anderson, there has never been a claim made in immigration proceedings that, as a practical matter, the solution isn't working. And, of course, there's no argument here. There's no argument that, hey, I couldn't do it. We've never seen that argument. So I guess maybe I'm too optimistic here in saying that the Court's decision in Hernandez v. Anderson as a practical matter is working. We've seen it. I mean, cases probably have been terminated, and cases probably have moved on. You know, and there were things that were indisputable in the record that were going to ‑‑ I mean, you know, the good moral character is definitely, I mean, you know, again, he has this noncortante argument. But, again, applications are always continuing. And he would have had to ‑‑ a real problem demonstrating his eligibility for naturalization with that conviction, the aggravated felony conviction. So, you know, to sum up, you know, this Court will find in determining his jurisdiction that he is removable for that aggravated felony, thereby dismantling the prejudice argument. And, you know, the naturalization issue is really taken care of under this Court's precedent in Hernandez v. Anderson. So. Thank you, counsel. Thank you. Rebuttal. First of all, in relation to the issue of prejudice, this is an ultra‑virus case. That's what it arises and falls on. So prejudice isn't even an issue as far as ultra‑virus goes. I want to make that one point. Now, as to the regulations, both regulations say they may lodge additional factual allegations. However, the requirements that follow after that are all mandatory. The mandatory peremptory shall is used throughout the regulation. Third point I'd like to, in response, is this is a contested removal proceeding. He's contesting the charges. So that's why the issue of how the pleading and how it's amended becomes important. He hasn't conceded removability. He's contesting it at this stage. And if you sustain the charge, then there's an issue as to whether he can prove whether this is an aggravated felony or not. Fourthly, as to the conviction issue or the conviction date on the judgment, understanding the provisions of Federal Rules of Criminal Procedure 32K1, I do note that that's not the controlling statute for determining the conviction for the immigration proceeding. That is 1101A43 ‑‑ 48, rather. I'm sorry. And under that statute, other circuits have applied those standards to that particular statute in construing it as to the date of the conviction. And the date of the conviction is when the sentence was imposed as opposed to when the judge signs off on the order. In this case, I agree. It says sentence imposed August 2nd. And then the signature at the bottom has a date underneath it of August 8th. And the filing date is August 8th. But the imposition of sentence was on August 2nd, according to the judgment. And under 1101A48, that would be your date of conviction under the Immigration and Nationality Act. Whether it would be in a criminal proceeding, I do not know. But in the Immigration and Nationality Act, that would be the date of conviction. If this isn't an aggravated felony, what would have prevented you from at any time during this to go to the office and they know what's an aggravated felony or not and get naturalization? He did apply for naturalization. Well, but you were saying he's contesting that it's an aggravated felony. Is he contesting that he committed an aggravated felony on the 7th or that he didn't commit one on the 8th? Or is it just not ‑‑ I mean, there's one conviction here, whether it's the 7th or the 8th or on or about the 7th or 8th. Is he saying that's not an aggravated felony? I'm saying that they can't meet their burden of proof at that point. And their burden of proof is to prove the conviction. And they're alleging it happens on the 8th. And my client's position is that the conviction actually may have been the 2nd. That's the date of the imposition of sentence. You have to get past the pleading stage and the sustaining of the allegations before you even get to the legal issue as to whether it's an aggravated felony. However, I do note that, interestingly enough, after it was amended, there was never any amendment ‑‑ excuse me, never any pleadings taken to the quote‑unquote amendment to the factual allegation 4. Counsel, you don't disagree with opposing counsel's representation that no request was ever made to support the finding of a prima facie eligibility for naturalization? Unfortunately, we don't have the citizenship and immigration record proceeding in part of this case. There was a filing, as I recall, for NUNCPRO treatment and explaining why the reasons were and that he was in a removal proceeding. And we have never gotten any ruling on it at all. But was an explicit request made for the DHS to join in the statement of eligibility? I am unaware of any guidelines that spell it out. There may be something in the practice manuals for the agency. But I do not ‑‑ Well, the case requires it. So there has to be some compliance with it. So if the case requires there to be a statement from DHS, you know, agreeing that there's prima facie eligibility, there has to be some effort made to comply with that. So what's your representation regarding whether or not there was any attempt made to comply? Well, that would be true if we were looking to adjust now. But frankly, excuse me, to naturalize now. But that's an impossibility given his conviction record. The issue is actually what happened back in 1995. And was there any kind of statement at that point? And admittedly at that point, nobody ever wrote a letter and said, do you agree that I'm prima facie eligible for naturalization? It was part of the regulations in those days for the termination, but that could only be raised in front of the immigration judge. So at that point in time, where is the indication? And the indication has to be the notice of administrative closure. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case as argued is submitted for decision by the court. And we are adjourned.
judges: Garbis, Rawlinson, Callahan